Filed 8/28/20  P. v. Siordia CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS SIORDIA et al.,<br><br>    Defendants and Appellants. | B299510<br><br>(Los Angeles County<br>Super. Ct. No. YA093332) |

APPEALS from judgments of the Superior Court of Los Angeles County.  Amy N. Carter, Judge.  Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant Carlos Siordia.

Earl C. Broady, Jr., under appointment by the Court of Appeal, for Defendant and Appellant David Sufle.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

Carlos Siordia and David Sufle appeal the judgments entered following a jury trial in which Sufle was convicted of first degree murder (Pen. Code,[1] § 187, subd. (a)), and Siordia was convicted of the lesser included offense of voluntary manslaughter (§ 192, subd. (a)).  The jury found the firearm allegations true as to Sufle (§ 12022.53, subds. (b), (c), (d), & (e)(1)), but not true as to Siordia.  As to both appellants, the jury found the gang allegation to be true.  (§ 186.22, subd. (b)(1)(C).)  The trial court sentenced Sufle to 50 years to life and Siordia to 21 years in state prison.

In his appeal, Siordia challenges the sufficiency of the evidence to support the gang enhancement; Sufle argues that the trial court prejudicially erred in denying his motion to bifurcate the gang allegation.  We reject both contentions and affirm the judgments of conviction.

## FACTUAL BACKGROUND

Ruben Mendoza and Siordia worked together in construction, and Mendoza considered Siordia to be his best friend.  The two men built Mendoza's house on Berendo Avenue where Mendoza was living with his family in November 2015.

Sometime in the evening of November 13, 2015, Siordia went to Mendoza's home and spoke to him about money owed Siordia from a contracting job.  When Siordia left, he indicated that he might return the next day.

Around 7:30 p.m. on November 14, 2015, Mendoza's nephew, Edgar, was working in the garage when Siordia came by and asked to speak with Mendoza.  Mendoza met Siordia outside.  At some point Edgar heard Mendoza, Siordia, and another person

---

[1] Undesignated statutory references are to the Penal Code.

2

whose voice he did not recognize arguing in the alley next to the garage.  Edgar went to the alley to investigate, followed by Mendoza's stepdaughter, Liliana, who had seen Edgar running toward the commotion.  As they approached the alley Liliana heard Siordia say, " 'I want my money.' "

In the alley they found Siordia struggling with Mendoza to keep him from fighting Sufle, whom Edgar had never seen before. Sufle had tattoos on his neck and was wearing blue latex gloves. Edgar moved Siordia to the side to separate him from Mendoza, who had blood on his mouth.  As Sufle angrily looked on, he said to Mendoza, " 'You have to pay the money to my cousin.' "

Liliana tried to push Mendoza toward the house as Edgar attempted to calm Siordia down.  Edgar was still holding onto Siordia when Sufle said, " 'That's enough' " or " 'That's it,' " and pushed Liliana away from her stepfather.  Sufle then turned to Siordia and said, " 'Give me that' " or " 'Give it to me.' "  Without saying a word, Siordia simply lifted his sweater to reveal a gun tucked into the waistband of his pants.  Declaring, " 'This is my barrio,' " Sufle grabbed the gun and fired a single shot into Mendoza's abdomen.  After he shot Mendoza, Sufle repeated, " 'This is my barrio.' "  As Mendoza fell to the ground, Siordia grabbed Sufle, and the two men fled.  They ran to a white Chevrolet SUV parked nearby, got in, and sped away.  Two days after the shooting, Sufle and his wife were pulled over in their white Chevrolet Traverse SUV.

Mendoza died from a single fatal gunshot wound to the abdomen.  He also suffered blunt force trauma to the head and face, which included a red abrasion on the right side of his forehead, a red bruise on the left side of his face, and a dark red abrasion on the left side of his lower lip.

**DISCUSSION**

**I. Substantial Evidence Supported the Jury's True Finding on the Gang Enhancement as to Siordia**

**A. *Applicable law***

We review the sufficiency of the evidence supporting the jury's true finding on the gang enhancement applying the same standard we use to review a substantial evidence challenge to a conviction. (*People v. Rivera* (2019) 7 Cal.5th 306, 331 (*Rivera*).) That is, we review the whole record in the light most favorable to the judgment, presuming in its support every fact that a finder of fact could reasonably deduce from the evidence. (*People v. Flores* (2020) 9 Cal.5th 371, 411; *People v. Mendez* (2019) 7 Cal.5th 680, 702.)

This standard applies regardless of whether the prosecution relies on direct or circumstantial evidence. (*People v. Thompson* (2010) 49 Cal.4th 79, 113.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation.] 'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357–358; *People v. Gomez* (2018) 6 Cal.5th 243, 278.) Indeed, "[a] reversal for insufficient evidence 'is unwarranted

4

unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*Zamudio*, at p. 357.)

There are two prongs to the gang enhancement under section 186.22, subdivision (b)(1), both of which the prosecution must satisfy with proof beyond a reasonable doubt to support a true finding by the jury. (*People v. Franklin* (2016) 248 Cal.App.4th 938, 948 (*Franklin*); *People v. Albillar* (2010) 51 Cal.4th 47, 59 (*Albillar*).) The first prong requires proof that the felony was "gang related," that is, the defendant committed the offense "for the benefit of, at the direction of, or in association with any criminal street gang." (§ 186.22, subd. (b)(1); *Rivera*, *supra*, 7 Cal.5th at p. 331; *Albillar,* at p. 60.) The prosecution need not prove that the defendant was himself a member of a gang; rather, the first prong is satisfied with proof that the defendant committed the crime *in association* with a known gang member. (See *Albillar*, at pp. 61–62; *People v. Vega-Robles* (2017) 9 Cal.App.5th 382, 425 [non-gang member codefendant acted in concert with known gang members, satisfying first prong]; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322 [same] (*Villalobos*).)

The second prong of section 186.22, subdivision (b) "requires that a defendant commit the gang-related felony 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.' " (*Albillar*, *supra*, 51 Cal.4th at pp. 64, 67; *Rivera, supra*, 7 Cal.5th at p. 331; see § 186.22, subd. (b)(1).) Because only rarely does direct evidence of a defendant's intent exist, specific intent must often be inferred from the circumstances of the crime and the defendant's acts. (*People v. Sanchez* (2016) 63 Cal.4th 411, 457.)

5

**B.** *Substantial evidence supports the finding that Siordia committed the crime in association with a known gang member*

Siordia contends that because there was no substantial evidence that Sufle was a current or active gang member, much less any evidence that Siordia was aware of Sufle's gang status, the prosecution failed to establish the crime was "gang-related." We disagree.

There was ample evidence from which the jury could infer that Sufle was an active member of the South Los 13 gang at the time of the shooting. In October 2007, Sufle was contacted with other members of the South Los 13 gang by a Los Angeles County Sheriff's Department gang detective. At that time, Sufle admitted he was a South Los gang member with the moniker "Speedy," and the detective noted he had "S O X  L O S"—a reference to the South Los gang—tattooed in large letters across his back. Ten years later, in 2017, Sufle still had that tattoo as well as numerous other prominent South Los 13 tattoos on his arms, chest, and back.

At trial, the prosecution gang expert explained the significance of those tattoos. According to Detective Arevalo, gang tattoos reflect a strong commitment to the member's gang, and they are generally "earned" by committing crimes and acts of violence. The larger the tattoo, the greater the person's allegiance to the gang, and the more serious the criminal acts required to earn such a tattoo. Moreover, gangs do not take kindly to imposters: A non-gang member who gets an unearned gang tattoo will suffer violent repercussions from the gang. Detective Arevalo also explained that the process of leaving a gang involves cutting off all ties and affiliation to the gang,

6

including having gang tattoos removed and moving away from the neighborhood.

Sufle showed up to help Siordia collect the money wearing blue latex gloves, which indicated to Detective Arevalo that he intended to commit a violent crime. The expert also opined that because the shooting occurred in territory controlled by the South Los 13 gang, the crime would enhance the gang's reputation for violence and instill fear in the community, which would ultimately benefit the gang. Finally, Sufle's declaration, "This is my barrio," both immediately before and after fatally shooting Mendoza, was a strong indication that this shooting in South Los 13 gang territory was being carried out by a member of that gang.

There was also substantial evidence from which the jury could infer that Siordia was well aware of Sufle's status as a gang member. Sufle and Siordia's wives were sisters. Siordia and Sufle thus had a close familial relationship, and Sufle's numerous gang tattoos that were clearly visible on his arms, neck, chest, and back proclaimed his gang affiliation. Instead of returning alone to discuss the debt with Mendoza, Siordia came armed with a gun hidden under his shirt, accompanied by a gang member wearing latex gloves who had no apparent business there except to force Mendoza to pay Siordia. After Sufle had fatally shot Mendoza using the gun Siordia had brought to the confrontation, Siordia grabbed Sufle and they fled together in Sufle's vehicle.

On the strength of this evidence, the jury was justified in its conclusion that Siordia committed the crime in association with a known member of the South Los 13 gang, and that finding is supported by substantial evidence.

7

**C. *Substantial evidence supports the finding that Siordia intended to promote, further, or assist in criminal conduct by a gang member***

Siordia's claim that there was no substantial evidence Siordia intended to assist, further, or promote criminal conduct by a gang member also fails. The evidence overwhelmingly supported the inference that Siordia did not simply bring a family member who happened to belong to a gang to help him collect money from Mendoza, but brought Sufle to Mendoza's house in South Los 13 gang territory precisely because he was a member of that gang who would carry out an act of violence against Mendoza if he did not pay up. Siordia went to Mendoza's house armed with the gun that Sufle used to kill Mendoza. Sufle showed up to help Siordia collect money from Mendoza wearing latex gloves. Sufle plainly knew Siordia was carrying a gun when he turned to Siordia and said, " 'Give me that.' " It was equally clear that Siordia knew exactly what Sufle meant when, without saying a word, he simply lifted his sweater to allow Sufle to take the gun out of his waistband. Sufle did not hesitate to shoot Mendoza, and at least twice declared, "This is my barrio," before and after shooting him. Finally, Siorda did nothing to render aid to his friend after he was shot, but instead grabbed Sufle and fled with him in Sufle's vehicle which was parked nearby.

As our Supreme Court has declared, "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar, supra,* 51 Cal.4th 68; *People v. Livingston* (2012) 53 Cal.4th 1145, 1171.) Here, the foregoing evidence of

Siordia's intentional acts, together with the compelling evidence that Siordia acted in association with a known gang member in committing the crime, constitutes sufficient evidence to meet the specific intent requirement for the second prong of the gang enhancement statute.  (See *Villalobos*, *supra*, 145 Cal.App.4th at p. 322 [defendant's " 'intentional acts, when combined with [her] knowledge that those acts would assist crimes by . . . gang members, afforded sufficient evidence of the requisite specific intent' "].)

## II.  The Trial Court Did Not Abuse Its Discretion in Denying Sufle's Motion to Bifurcate the Gang Allegation

A trial court has broad discretion to control the conduct of a criminal trial "with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." (§ 1044; *People v. Hernandez* (2004) 33 Cal.4th 1040, 1048 (*Hernandez*).)  The court's authority extends to bifurcation of certain trial issues, including the jury's determination of the truth of gang enhancement allegations.  (*Hernandez*, at p. 1048.)  Here, Sufle contends the trial court abused its discretion in denying his motion to bifurcate the gang allegation from the trial of the underlying charges because there was no evidence the offense was gang-related.[2]  He further asserts the admission of the irrelevant and highly prejudicial gang evidence during the trial on the substantive offense denied him his right to a fair trial.  We disagree.

A trial court properly bifurcates gang allegations when the gang evidence is "so extraordinarily prejudicial, and of so little

---

[2] Siordia did not join in Sufle's motion.

relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual guilt." (*Hernandez, supra*, 33 Cal.4th at p. 1049.) In a case not involving imposition of the gang enhancement, "evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal." (*Ibid.*) Conversely, our Supreme Court has observed that "evidence of gang membership is often relevant to, and admissible regarding, the charged offense." (*Ibid.*) Indeed, such evidence "can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.] To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary." (*Id.* at pp. 1049–1050; see *People v. Mendoza* (2000) 24 Cal.4th 130, 178 (*Mendoza*) [element of fear]; *People v. Williams* (1997) 16 Cal.4th 153, 193 [motive and identity]; *People v. Champion* (1995) 9 Cal.4th 879, 922–923 [identity].)

"Given the public policy preference for the efficiency of a unitary trial, a court's discretion to deny bifurcation of a gang allegation is broader than its discretion to admit gang evidence in a case with no gang allegation. [Citation.] Thus, '[e]ven if some of the evidence offered to prove the gang enhancement would be inadmissible at a trial of the substantive crime itself . . . a court may still deny bifurcation.' " (*Franklin, supra*, 248 Cal.App.4th at p. 952; *Hernandez, supra*, 33 Cal.4th at p. 1050.)

A trial court's denial of a motion to bifurcate is reviewed for abuse of discretion based on the record as it stood at the time of the ruling. (*Hernandez, supra*, 33 Cal.4th at p. 1048; *Franklin, supra*, 248 Cal.App.4th at p. 952.) An abuse of discretion is

"established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Carrington* (2009) 47 Cal.4th 145, 195; *People v. Ochoa* (1998) 19 Cal.4th 353, 408 ["[a] court abuses its discretion when its rulings fall 'outside the bounds of reason' "]; *People v. Fuiava* (2012) 53 Cal.4th 622, 663.) "If the trial court's ruling was correct on the record before it, the ruling is subject to reversal only upon a showing that ' "joinder actually resulted in 'gross unfairness' amounting to a denial of due process." ' " (*Franklin*, at pp. 952–953; *Mendoza, supra*, 24 Cal.4th at p. 162.)

We find no abuse of discretion in the trial court's denial of Sufle's bifurcation motion. "[E]vidence related to gang membership is not insulated from the general rule that all relevant evidence is admissible if it is relevant to a material issue in the case other than character, is not more prejudicial than probative, and is not cumulative." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167; see *Hernandez, supra*, 33 Cal.4th at p. 1049.) Here, the gang evidence was inextricably intertwined with the substantive offense, and the evidence that supported the gang allegation would have been admissible to prove motive and intent regardless of whether the trial was bifurcated. (See *Hernandez, supra*, 33 Cal.4th at pp. 1050–1051.)

The gang evidence was relevant to prove the prosecution's theory that Sufle shot Mendoza because Mendoza, who lived in Sufle's gang territory, refused to comply with Sufle's demand that he pay Siordia. A failure by Sufle to respond to Mendoza's defiance would have undermined the gang's reputation and shown Sufle himself to be weak. Sufle's declaration, " 'This is my barrio,' " immediately before and after shooting Mendoza showed

11

that the gang, and Sufle as its representative, could operate with impunity and would not tolerate challenges to its authority within its territory.  The gang evidence thus supplied proof of Sufle's motive and intent to commit the crime.

The gang evidence was also relevant to prove that Siordia harbored the requisite intent to kill for the charge of first degree murder.  It was the prosecution's theory that Siordia brought Sufle to the confrontation with Mendoza intending to use Sufle's gang status to bully Mendoza into paying Siordia.  Thus, Siordia provided Sufle with a gun, and because Sufle was a known gang member whose gang controlled the territory in which Mendoza lived, Siordia knew Sufle would reliably collect the money from Mendoza or retaliate if Mendoza refused to pay.

Nevertheless, characterizing the crime as a shooting over the nonpayment of a debt, Sufle insists that the crime was not gang related, and admission of the gang evidence was irrelevant and unduly prejudicial.  As Sufle tells it, he became angry "for whatever reason" and shot the victim after an argument over a monetary debt escalated into a fist fight.  But the gang evidence explained precisely the reason Sufle became angry:  Sufle's gang controlled Mendoza's neighborhood, Siordia specifically brought Sufle to coerce Mendoza into paying the money, and Mendoza refused.  When Mendoza defied Sufle, Sufle shot him, declaring, "This is my barrio," thus maintaining the gang's reputation for violence and instilling fear in the community.  Indeed, the only context in which Sufle's declaration makes any sense at all is in the context of gang culture:  It would be absurd if a mere friend or family member assisting in the collection of a debt were to proclaim, "This is my barrio" or "This is my neighborhood" before and after fatally shooting the debtor for nonpayment.

In these circumstances, the trial court properly found the gang evidence to be relevant and admissible on the issues of motive and intent and did not abuse its discretion in refusing to bifurcate the gang allegations.

## DISPOSITION

The judgments are affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.