Filed 10/24/22 P. v. Larios CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROQUE LARIOS, JR.,<br><br>Defendant and Appellant. | F082078<br><br>(Super. Ct. No. MF013783A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. David R. Zulfa, Judge.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Kari Mueller, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Roque Larios, Jr. was convicted by jury for attempted murder and related crimes after he twice shot a man. On appeal, Larios argues the trial court erred in denying a

motion for mistrial after the prosecutor played an unredacted recording in which the victim stated he believed Larios "just got out of prison …." We disagree with this contention.

Larios also challenges his sentence based on newly enacted Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, §§ 1-3) (SB 567) and Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1) (AB 518). As explained below, we agree AB 518 justifies relief. We will vacate the sentence in the disposition and remand for a new sentencing hearing.[1]

## BACKGROUND

**Charges**

The Kern County District Attorney charged Larios with committing five crimes: attempted murder (Pen. Code,[2] §§ 664 & 187; Count 1), assault with a firearm (§ 245, subd. (a)(2); Count 2), assault with a firearm (§ 245, subd. (a)(2); Count 3), illegally possessing a firearm (§ 29800, subd. (a)(1); Count 4), and illegally possessing ammunition (§ 30305, subd. (a)(1); Count 5). The charges included allegations Larios premeditated the attempted murder (§ 189), personally discharged a firearm causing great bodily injury (§§ 12022.53, subd. (d), 12022.5, subd. (a), & 12022.7, subd. (a)), and was previously convicted of a serious felony (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e), & 667, subd. (a).)

---

[1] Because we will remand for a new sentencing hearing, Larios's challenge to certain fines and fees imposed as part of the judgment is moot. He can raise his challenge in the trial court on remand.

[2] All statutory references are to the Penal Code.

**Evidence**

The victim testified he was in a "sexual relationship" with Marlene Coffman.[3] Larios was also in a relationship with Coffman. On one occasion, Larios approached the victim in an alley and challenged him to a fight. No fight ensued but Larios did fire a gunshot at the victim.

Three days later, Larios confronted the victim in Coffman's home and said, "I thought I told you to stay away from … here."[4] He then stated, "You better get out of here before I blast you, fool." The victim hesitated and Larios shot him twice.

An eyewitness testified she heard the gunshots and then saw a man run to a car, enter it, and "dr[i]ve off real fast." Coffman was the driver. Larios and Coffman were arrested about one week later, at which time Larios possessed ammunition matching the "brand and … cartridge designation" used in the shooting.

**Inadmissible Evidence**

The jury inadvertently heard the victim state Larios "had just got out of prison, I guess …." This statement was contained in an unredacted video recording but not in the accompanying transcript. The video was later redacted to conform to the transcript.

**Verdict and Sentence**

Prior to jury deliberations, Larios pled no contest to illegally possessing a firearm and ammunition (Counts 4 and 5). The jury subsequently acquitted Larios of the charge relating to the alley confrontation (Count 3) but convicted on the remaining charges. The premeditation, firearm, injury, and prior conviction allegations were found true.[5] He was sentenced to serve 50 years to life in prison.

---

[3] Coffman was a codefendant and convicted by the same jury of violating Penal Code section 32. Her appeal is decided in related case No. F082161.

[4] The alley where the prior confrontation took place is near Coffman's home.

[5] Larios pled to Counts 4 and 5 outside the jury's presence. Likewise, the court found true the prior conviction allegation outside the jury's presence.

# DISCUSSION

This appeal presents two questions. Did the trial court err in denying the mistrial motion? Does new legislation warrant a new sentencing hearing? We conclude the court did not err in denying the mistrial motion but new legislation, specifically AB 518, warrants a new sentencing hearing.

## I. The Inadmissible Evidence Was Not Prejudicial

Larios argues "the prosecution misconduct [in failing to redact the video] violated [his] federal constitutional rights to due process and a fair trial." He claims, "Once the jury heard inadmissible evidence that [he] just got out of prison, the bell could not be 'unrung.' " Alternatively, he contends "the prosecution misconduct requires reversal under state law if it is reasonably probable that the jury would have reached a more favorable result absent the objectionable conduct."

The People argue "[t]he inadvertent failure to redact the fleeting reference to [Larios's] prior custody status did not irretrievably damage his chances of receiving a fair trial." They also believe "he has forfeited any claim of prosecutorial error, which, in any event, fails due to a lack of showing of prejudice."

Candidly, it is not clear what precise basis Larios rests his argument upon. It appears he presents a prosecutorial misconduct claim couched within a fair trial claim. He also mentions the standard for reviewing a denied mistrial motion. Accordingly, we will consider prosecutorial misconduct, the motion for a mistrial, and the right to a fair trial.

### A. Additional Background

Prior to jury trial, the trial court granted Larios's motion in limine to exclude from evidence "all references" to the fact he was "on supervision." The court noted, "[T]o the extent that, for example," Larios's "parole status has been excluded, that is information you would need to share with" the witnesses.

4.

During the trial, the prosecutor presented a video recording of a law enforcement interview with the victim. An initial attempt to play the video was halted by the court. The court explained to the jury there was "an issue with the disk" and it would be addressed "tomorrow morning."

The following morning, an edited recording was played for the jury. When the video concluded, the prosecutor asked for a sidebar outside the jury's presence. The jury was excused from the courtroom and the parties discussed the fact the video was insufficiently redacted. In the court's words, "there was a portion [of the video] that did not appear on the transcript … that was not to be in there relating to a potential statement regarding … Larios and being in prison or having just gotten out of prison, something of that nature."

Later, Larios's counsel filed a motion for a mistrial.[6] At the hearing on the motion, counsel argued "the defense … very assiduously … guarded the fact" Larios had a "prior conviction" and "that he went to prison …." Counsel explained protecting that fact impacted jury selection because "the jury" was "not asked" how "they feel about a client having convictions and whether they can sit on a jury knowing that fact, whether they can overcome that fact." Counsel added the prior conviction fact impacted opening statement because she "would never do an opening statement where [she] do[es] not mention the fact that, 'Hey, you know, the client has prior convictions.' "

The court concluded "there is no doubt that an erroneous admission of evidence occurred." The court believed it could "address [the issue] adequately with a curative instruction" and subsequently denied the motion. Ultimately, Larios's counsel "decided to forego a curative instruction." Accordingly, the jury was not instructed to disregard the victim's statement Larios "had just got out of prison, I guess …."

---

[6] The later filing complied with the court's wish. The court, speaking about the mistrial motion, stated, "I don't want to have the motion made sort of on the fly if we don't have to do that, and so we are going to hear that motion on Monday morning."

**B. Analysis**

We will first address prosecutorial error, then the motion for a mistrial, and last the right to a fair trial. We find no error on these grounds.

### i. Prosecutorial Misconduct

" 'Under California law, a prosecutor commits reversible misconduct if he or she makes use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights—such as a comment upon the defendant's invocation of the right to remain silent—but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged action " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " ' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 679.) " '[I]t is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony" or present inadmissible evidence, but "merely eliciting evidence is not misconduct.' " (*Ibid.*)

Here, it does not appear the prosecutor intentionally elicited inadmissible evidence. The transcript itself was redacted and, based on the record, no other redactions were missed. It appears the error was negligent, not malicious. In sum, there is no prosecutorial misconduct.

In truth, the claim presented is most akin to an inadmissible evidence claim. " ' When evidence is erroneously admitted, we do not reverse a conviction unless it is reasonably probable that a result more favorable to the defendant would have occurred absent the error.' " (*People v. Young* (2019) 7 Cal.5th 905, 931 (*Young*).) This standard is not met for two reasons.

One, the inadvertently admitted evidence was speculative. The jury heard the victim state he *guessed* Larios had recently been released from prison. Speculation is not

evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 735.) There is no reason to believe the jury would base its verdict on a guess.

Two, the jury acquitted Larios of firearm assault as charged in Count 3. This dispels any inference of bias. (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1131-1132.)

For all these reasons, we find no prejudice stemming from the inadmissible evidence. Accordingly, we reject the prosecutorial misconduct claim.[7]

### ii. Mistrial Motion

" ' "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.]" [Citation.] A motion for a mistrial should be granted when " ' "a [defendant's] chances of receiving a fair trial have been irreparably damaged." ' " ' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 298.) A ruling denying a mistrial motion is reviewed for abuse of discretion. (*People v. Schultz* (2020) 10 Cal.5th 623, 673.) Larios bears the burden to show the trial court abused its discretion. (*People v. Maury* (2003) 30 Cal.4th 342, 437.)

The burden is not satisfied in this case. Put simply, the court here did not abuse its discretion in finding a curative admonition was sufficient to dispel any prejudice. A mistrial motion is properly denied where there is no prosecutorial misconduct (*ante*) and the reference to criminal history is "brief and isolated …." (*Valdez, supra,* 32 Cal.4th at p. 128.) Indeed, "[t]he California Supreme Court has consistently found vague and

---

[7] Notably, in similar circumstances, the California Supreme Court has recognized the decision to forgo a curative admonition forfeits a prosecutorial misconduct claim. (*People v. Valdez* (2004) 32 Cal.4th 73, 124-125 (*Valdez*) [prosecutorial misconduct claim forfeited where counsel rejected curative admonition after witness improperly referred to defendant's "custodial status"].)

fleeting references to a defendant's past criminality to be curable by appropriate admonition to the jury." (*People v. Franklin* (2016) 248 Cal.App.4th 938, 955.) This case is no exception.

### iii. Due Process and the Right to a Fair Trial

The erroneous admission of evidence "results in a due process violation only if it makes the trial *fundamentally unfair.*" (*People v. Partida* (2005) 37 Cal.4th 428, 439.) As noted *ante*, the erroneous admission of evidence is reviewable for prejudice. (*Young, supra,* 7 Cal.5th at p. 931.) Accordingly, the "brief and isolated" (*Valdez, supra,* 32 Cal.4th at p. 128) reference to prison in this case could not have rendered the trial fundamentally unfair. This is especially so where the reference was speculative. In short, Larios was not denied a fair trial.

## II. Senate Bill No. 567 and Assembly Bill. No 518

At the time the court pronounced judgment in this case, section 654 provided an act or omission "punishable in different ways by different provisions of law" was necessarily punished "under the provision that provide[d] for the longest potential term of imprisonment." (Former § 654, subd. (a), as amended by Stats. 1997, ch. 410, § 1.) After the court pronounced judgment, and while this appeal was pending, AB 518 amended section 654, subdivision (a), "to afford sentencing courts the discretion to punish the act or omission under either provision," without regard to the longest potential term of imprisonment. (*People v. Mani* (2022) 74 Cal.App.5th 343, 351.)

Similarly, after the court pronounced judgment, and while this appeal was pending, the Legislature enacted SB 567. SB 567 "amended section 1170, subdivision (b), to specify that, when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is waived) beyond a reasonable doubt, or

(3) based on prior convictions evidenced by a certified record of conviction." (*People v. Jones* (2022) 79 Cal.App.5th 37, 44 (*Jones*).)

Larios argues the "case must be remanded for resentencing consistent with the provisions of newly enacted [SB] 567 and [AB] 518." The People believe remand is unnecessary under either bill.

As to SB 567, the People assert the sentence was properly imposed because it was "primarily" based on Larios's "recidivism and, to the extent the upper term was based on other factors, any error was harmless beyond a reasonable doubt." Turning to AB 518, the People claim the court's pronouncement of judgment implicitly "indicate[d] it would not, in any event, exercise its discretion to reduce the sentence on remand by staying sentence on count one in favor of imposing sentence on one of the other counts."

For reasons that follow, we find AB 518 warrants a new sentencing hearing. Accordingly, the SB 567 issue is moot.

### A. Additional Background

At the sentencing hearing, the court considered first Larios's various requests for the court to exercise sentencing discretion. As to the prior strike finding (§§ 667, subds. (c)-(j) & 1170.12, subds. (a)-(e)), the court recited Larios's criminal history and then held:

> "And so based on his criminal history, the nature of the current offense, given that the use of the firearm resulted in great bodily injury to the victim, the fact that he was found to have been in personal use and discharge of that firearm, resulting in that as well as the overall circumstances that the Court was made aware of through the receipt of evidence during the course of the trial, I do believe that it would be outside the spirit of the Romero line of cases and I will not use my discretion."[8]

The court then turned to the remaining enhancements.

---

[8] See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

9.

Addressing the remaining enhancements, the court stated:

> "As to the 25 to life firearm enhancement, what gave me great concern about this case, in particular, were the specific facts of the date in which Mr. Larios was found guilty. The evidence that was presented to the Court was that just prior to Mr. Larios showing up and entering the house and -- or the apartment, I should say, and eventually discharging the firearm, at least, I believe, three times, based on the evidence that was presented, is that there were young children in the area; specifically, in the apartment; specifically, Ms. Coffman's children that were somewhat left unattended, but were certainly known to be there.

> "The children, the evidence was, had been warning the victim in this case that he needed to leave and that he wasn't supposed to be there anymore. It was the children that gave him that information. Where the children ended up, there was not evidence directly on that. …

> "But the fact that children were in the area, the fact that other people in those apartments were endangered, this shooting occurred in the common areas of the apartment complex where it would not have been unreasonable to expect other people were placed in danger as a result of the brazen discharge of the firearm in this case.

> "It is that evidence and that information that convinces the Court that it would be an improper use of discretion to strike the 12022.53(d) enhancement.

> "As to the 667(a), again, not looking [pro]spectively but looking historically and at the current circumstances, I do look at the fact that as far back as 1994, we have circumstances involving a firearm and, obviously, drug use as well. We have commitments to the California Youth Authority as early as 1995. And since then, Mr. Larios has been consistently in custody, out of custody, and then almost immediately back into custody.

> "The longest that I'm noting that it appears as though he has remained custody free appears to have been for

approximately three years, from October of 2004 to October of 2007. Beyond that, it does not appear as he has remained custody free and, therefore, I do believe that it is within the Court's discretion to impose the five year, 667(a) prior based on that history, and combined with the fact that it does appear as though his conduct has continued to escalate as far as the amount of violence that is imposed, culminating in this situation where he shot another human twice outside of an apartment within the common areas.

"And so, I will respectfully deny the request to strike or stay the imposition of the 667(a). I believe it is within my discretion, based on these specific facts and the consideration of that information that is appropriate, to impose the 667(a)."

The court subsequently imposed a 44-year-to-life sentence on Count 1. On Count 2, the court imposed a 36-year sentence but stayed it pursuant to section 654. The court added a six-year sentence on Count 5, totaling the sentence to equal 50 years to life in prison.

## B. Analysis

Both parties agree the AB 518 amendment to section 654 applies retroactively to this case. They disagree, however, on whether remand is appropriate.

The People argue remand is inappropriate because "the trial court's imposition of maximum possible sentence and declining to strike allegations despite being requested to do so indicate it would not, in any event, exercise its discretion to reduce the sentence on remand by staying sentence on count one in favor of imposing sentence on one of the other counts." Larios claims the People's "argument amounts to speculation about what the trial court might [d]o on remand, [and] in the absence of a clear indication on the record, such as a statement at the time of sentencing that the defendant should be incarcerated as long as possible," then remand is warranted. We agree with Larios the record warrants a remand.

" 'Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of

11.

the scope of its discretionary powers" does not exercise " ' "informed discretion …." ' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)

Here, the trial court was unaware it had discretion to impose a lesser sentence because, at the time, section 654 mandated the longest sentence possible. That is no longer the law. "In such circumstances, … the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Gutierrez, supra*, 58 Cal.4th at p. 1391.) The record contains no clear indication.

While it is true the trial court imposed the longest sentence possible, and declined to strike certain enhancements, this does not foreclose the possibility it might impose a lesser sentence were that an option.[9] "Because the trial court[] operated under a governing presumption" mandating the longest sentence, "we cannot say with confidence what sentence [it] would have imposed absent the presumption." (*Gutierrez, supra,* 58 Cal.4th at p. 1391.) "We depart from our duties as a court of review when we unilaterally conclude that some crimes are sufficiently 'horrendous,' or some sentences so 'lenient,' that any lesser sentence would be 'contrary to the interests of justice' '[a]s a matter of law.' " (*People v. Salazar* (2022) 80 Cal.App.5th 453, 466-467 (conc. & dis. opn. of Tangeman, J.).)[10] Because the trial court here did not clearly indicate Larios was

---

[9] A possibility justifying relief does not mean " 'more likely than not, ' " it simply means " 'more than an *abstract possibility*.' " (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050.)

[10] For example, in considering whether to impose a consecutive sentence on Count 5, the court stated, "As far as the imposition of the consecutive sentence, I do think that that is appropriate. As to the amount of time that will be imposed consecutive, I will reserve judgment on that until I hear final comments prior to the imposition of sentencing." This indicates the court retained a mind open to leniency, i.e., more than an abstract possibility. For clarity, although the court stated it would "reserve judgment" on Count 5 until "final comments," there were no more comments on the issue.

12.

unworthy of any leniency, we believe the AB 518 amendment to section 654 justifies a new sentencing hearing.[11]

## **DISPOSITION**

The sentence is vacated but the judgment is otherwise affirmed. The trial court is directed to conduct further proceedings consistent with this opinion.

SNAUFFER, J.

WE CONCUR:

LEVY, ACTING P. J.

SMITH, J.

---

[11] Vacating the sentence in this case justifies a full resentencing. (*Jones, supra,* 79 Cal.App.5th at pp. 45-46.) "A court conducting a full resentencing … may, as appropriate, revisit sentencing choices such as a decision to stay a sentence [citation], to impose an upper term instead of a middle term [citation], or to impose concurrent instead of consecutive sentences …." (*People v. Valenzuela* (2019) 7 Cal.5th 415, 425.)

On remand, the trial court, with aid from the parties, should carefully comply with all new sentencing legislation, including SB 567 and AB 518, and other case law, e.g., *People v. Tirado* (2022) 12 Cal.5th 688. Adherence and diligence to rapidly changing sentencing law is perhaps difficult but vital to uniform resolution. Nothing in this opinion is intended to influence the trial court's sentencing discretion.