Filed 2/15/23  P. v. Garcia CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO HERNANDEZ GARCIA,<br><br>    Defendant and Appellant. | D079963<br><br><br>(Super. Ct. No. SCS298834) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Reversed and remanded with instructions.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION

Francisco Hernandez Garcia appeals a judgment of conviction after a jury found him guilty of premeditated attempted murder and assault with a firearm with true findings on gang enhancement allegations related to both offenses. He argues the convictions must be reversed—or, at minimum, the gang enhancement findings must be overturned—in light of newly-enacted Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333). He also claims his sentence should be vacated and the matter remanded for resentencing to allow the trial court to exercise its new sentencing discretion under Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518).

Reversal of Garcia's convictions is unwarranted. However, the People concede, and we agree, that Assembly Bill 333 compels us to reverse the jury's gang enhancement findings. On remand, the People may proceed directly to resentencing or, alternatively, they may retry Garcia on the gang enhancements in accordance with the gang enhancement law currently in effect. In either event, the trial court must conduct a full resentencing hearing, which renders it unnecessary for us to reach Garcia's arguments concerning Assembly Bill 518.

# II

# BACKGROUND

A. *Factual Background*

In October 2017, G.B., a member of the Old Town National City (OTNC) gang, was released from prison. While G.B. was in prison, he was housed in protective custody. Inmates who cooperate with law enforcement are often placed in protective custody because they can be targets of violence when they are housed with the general prison population.

2

Shortly after G.B.'s release from prison, he was threatened by Isaac Gonzáles, a fellow OTNC gang member. Gonzáles told G.B. he would be hurt or killed if he did not leave National City. Soon after, Gonzáles drove by G.B., made a hand gesture mimicking the shape of a gun, and pointed it at G.B.

A few days later, at approximately 11:40 p.m., an assailant shot G.B. with a shotgun outside his residence in National City. One of G.B.'s family members called 911 to report the shooting. The family member did not witness the shooting, but she believed Gonzáles may have been responsible for it based on his recent threats against G.B.

When law enforcement officers arrived at the crime scene, they found G.B. bleeding and laying on the front porch. He sustained a gunshot wound to the upper buttocks, but survived the shooting. A trail of blood droplets led from the front of the residence into the residence's backyard. There were also blood smears located near a brick or cinder block wall that divided the residence's backyard from the backyard of an adjoining property. G.B. was uncooperative with law enforcement and would not disclose the identity of the shooter. A few weeks later, Gonzáles was arrested for his suspected involvement in the shooting.

Law enforcement began to investigate the possibility Garcia may have been involved in the shooting as well. While the investigation was ongoing, Garcia was arrested and taken into county jail on unrelated charges. Law enforcement took advantage of the opportunity by conducting an undercover operation to determine whether Garcia had any involvement in the shooting. As part of the operation, an undercover officer and a paid informant were placed inside a jailhouse cell with Garcia.

In a conversation that was recorded and played for the jury, Garcia made several incriminating statements to the undercover officer and the informant. He stated he was "from OTNC" and his gang moniker was "Lil' One." He provided detailed information about cross streets close to the crime scene, as well as the timeframe of the shooting. He stated he "did the homey" and used a 20-gauge shotgun to "tak[e] out the trash." He also said, "[my homey] came … to [me] like here, you do it. So I took the gun and I just pow, you know. … I just got here and I just did it like nothing, like this, 'cause he was already almost over a brick wall. … And then I knew I had my chance right then and there and if not, then everything was going to get fucked up." Garcia said the victim did not know him and the "only people that knew" him were his "home boy and his girl." Further, Garcia confessed he hid the expended shotgun shell in a soda can and threw it over the side of the I-805 freeway.

B. *Procedural Background*

By amended information, Garcia was charged with one count of premeditated attempted murder (Pen. Code, §§ 187, subd. (a), 189, 664; count 1),[1] one count of assault with a firearm (§ 245, subd. (a); count 2), and one count of threatening a witness (§ 140, subd. (a); count 3). For count 1, the amended information included gang enhancement allegations (§ 186.22, subd. (b)(1), (4)), firearm enhancement allegations (§ 12022.53, subds. (b)–(d)), and personal infliction of great bodily injury allegations (§ 12022.7, subd. (a)). The amended information also included gang enhancement allegations (§ 186.22, subd. (b)(1)), firearm enhancement allegations (§ 12022.5, subd. (a)), and personal infliction of great bodily injury allegations (§ 12022.7, subd. (a)) for counts 2 and 3.

---

[1] Further undesignated statutory references are to the Penal Code.

## 1. *Gang Evidence*

At trial, the parties stipulated OTNC was a criminal street gang as defined by section 186.22, subdivisions (d) and (f).  They stipulated OTNC's primary activities included murder, attempted murder, assault with force likely to cause great bodily injury, assault with a deadly weapon, and felony vandalism.  Additionally, they stipulated members of OTNC engaged in a pattern of criminal activity within the meaning of section 186.22.

The prosecution elicited additional evidence concerning OTNC and its activities from a gang expert.  The gang expert testified OTNC has about 200 members and it is the oldest and largest gang in National City.  He testified OTNC has codes of conduct that include not cooperating with law enforcement and assisting fellow gang members who are in trouble or committing crimes.  According to the expert, an OTNC member who is perceived to have cooperated with law enforcement may be assaulted or murdered by a fellow gang member.  When presented with a hypothetical scenario mirroring the facts of the present case, the expert testified the shooting in question would benefit the assailant's gang by eliminating a snitch and signaling to fellow gang members there would be consequences if they were to cooperate with law enforcement.

The gang expert also testified he believed Garcia was a member of OTNC.  He based his opinion on his prior contacts with Garcia, his review of field interview cards, and his review of Garcia's social media accounts.  The prosecution showed photographs of Garcia to the expert, who testified the photographs depicted Garcia making OTNC hand gestures, wearing attire with symbols and colors attributed to OTNC, and standing in front of graffiti associated with OTNC.  Another witness, a member of the National City

5

Police Department, testified that Garcia once told him he was a member of OTNC and his gang moniker was "Lil' One."

Although the parties stipulated the members of OTNC engaged in a pattern of criminal activity, the prosecution introduced additional evidence to prove this element of the gang enhancement statute. It relied on certified records of conviction showing: (1) Jesus Torres committed felony vandalism with a gang allegation; (2) Alex Roman committed assault by means of force likely to cause great bodily injury; and (3) Alejandro Gasca committed an assault with a deadly weapon with a gang allegation. The prosecution's gang expert testified all three men were members of OTNC.

2. *Defense Evidence*

The defense introduced evidence that Gonzáles pleaded guilty to assault with a firearm (§ 245, subd. (a)(2)), and admitted a personal use of a firearm allegation (§ 12022.5), in connection with G.B.'s shooting. Gonzáles was sentenced to a 12-year prison term as a result of his guilty plea. As part of the plea, Gonzáles admitted he "committed the offense in association with a criminal street gang with a specific intent to promote the gang."

The defense also presented testimony from its own gang expert to offer a non-inculpatory explanation for the damaging admissions Garcia made to the undercover officer and informant during the recorded jailhouse conversation. The defense expert testified incarcerated persons can be assaulted or otherwise victimized by fellow prisoners if they are perceived as weak. Further, he stated an incarcerated person may want to appear more violent to avoid being preyed upon by others.

6

### 3. *Verdict and Sentencing*

After deliberations, the jury found Garcia guilty of the premeditated attempted murder and assault with a firearm charges.[2] It also returned true findings on all of the enhancement allegations associated with the charges.

The trial court sentenced Garcia to prison for an indeterminate term of 15 years to life for the premeditated attempted murder conviction and the associated gang enhancement, plus a determinate term of 10 years for the related firearm enhancement under section 12022.53, subdivision (b). Exercising its sentencing discretion under section 1385, the court struck the great bodily injury enhancement and the remaining firearm enhancements connected to the premeditated attempted murder conviction. Further, the court stayed punishment on the assault with a firearm conviction and its related enhancements under section 654.

## III

## DISCUSSION

Garcia argues his convictions and his gang enhancements must be reversed in light of Assembly Bill 333, which amended the gang enhancement statute in various respects and added section 1109, a new provision concerning the bifurcation of gang enhancement proceedings from trial on the substantive offenses. For reasons we will explain, Assembly Bill 333 requires reversal of Garcia's gang enhancements, but not his convictions.

### A. *Overview of Assembly Bill 333*

" 'In 1988, the Legislature enacted the California Street Terrorism Enforcement and Prevention Act (STEP Act; § 186.20 et seq.) to eradicate "criminal activity by street gangs." ' [Citation.] Among other things, the

---

[2]    The prosecution made a pretrial request to dismiss the charge of threatening a witness, which the trial court granted.

STEP Act created 'a sentencing enhancement for a felony committed "for the benefit of, at the direction of, or in association with any criminal street gang" (§ 186.22, subd. (b)(1)).' " (*People v. Tran* (2022) 13 Cal.5th 1169, 1205–1206 (*Tran*).) To prove the existence of a criminal street gang necessary to sustain a gang enhancement, the People must establish, among other things, that the members of the association or group in question engage in, or have engaged in, a "pattern of criminal gang activity." (§ 186.22, subd. (f).)

In 2021, the Legislature passed Assembly Bill 333, also known as the STEP Forward Act of 2021, which went into effect on January 1, 2022. (Stats. 2021, ch. 699, § 1.) "Assembly Bill 333 made the following changes to the law on gang enhancements: First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang,

8

requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)" (*Tran, supra*, 13 Cal.5th at p. 1206.) Fifth, it curtailed the list of predicate offenses that can be used to establish a pattern of criminal gang activity. (§ 186.22, subd (e)(1).)

"Finally, Assembly Bill 333 added section 1109, which requires, if requested by the defendant, a gang enhancement charge to be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime. If the proceedings are bifurcated, the truth of the gang enhancement may be determined only after a trier of fact finds the defendant guilty of the underlying offense." (*Tran, supra*, 13 Cal.5th at p. 1206.)

B. *Assembly Bill 333 Requires Reversal of the Gang Enhancements*

Assembly Bill 333 went into effect, and changed the elements of the section 186.22 gang enhancement, after Garcia was convicted and sentenced. Garcia claims the changes apply retroactively to his case because they were ameliorative changes to the criminal law and his judgment was not final when the changes went into effect. The People concede the changes apply retroactively to cases in which there has not been a final judgment, including the present case. We agree with Garcia's argument and accept the People's concession. (*Tran, supra*, 13 Cal.5th at pp. 1206–1207 [amendments to the gang enhancement statute apply retroactively to nonfinal judgments].)

Having decided the legislative changes apply retroactively, we turn to whether reversal of the gang enhancements is required. "When a substantive change occurs in the elements of an offense and the jury is not instructed as to the proper elements, the omission implicates the defendant's right to a jury trial under the Sixth Amendment, and reversal is required unless 'it appears

9

beyond a reasonable doubt' that the jury verdict would have been the same in the absence of the error." (*Tran, supra*, 13 Cal.5th at p. 1207.)

Because the current gang enhancement statute was not in effect at the time of Garcia's trial, the trial court did not instruct the jury on the existing elements of a section 186.22 gang enhancement. In particular, the court did not instruct the jury that: (1) members of the criminal street gang must collectively (not individually) engage in the pattern of criminal activity; (2) the predicate offenses that may be used to demonstrate a pattern of criminal activity must commonly benefit the criminal street gang in a way that is more than reputational; and (3) the currently charged offense may not be used as one of the predicate offenses. Further, the evidence elicited at Garcia's trial—including the parties' joint stipulation about OTNC—disclosed no details about whether OTNC's members collectively engaged in a pattern of criminal activity, or whether the predicate offenses commonly benefitted OTNC in a way that was more than reputational.

Given these circumstances, the People appropriately concede the gang enhancements must be reversed. We accept the People's well-taken concession. (See *Tran, supra*, 13 Cal.5th at p. 1207 [reversal of gang enhancement required where the "jury was not presented with any discernible theory as to how [gang's] members 'collectively engage[d] in' the[] predicate crimes," as required by the current gang enhancement law]; see also, e.g., *People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1032 [gang enhancement reversed because "the evidence did not establish that [the predicate offenses] 'commonly benefited a criminal street gang, and the common benefit of the offense [was] more than reputational' "]; *People v. Lopez* (2021) 73 Cal.App.5th 327, 346 [gang enhancements reversed where

10

"the People did not prove that the predicate offenses commonly benefitted a criminal street gang and that the benefit was more than reputational"].)

"The proper remedy for this type of failure of proof—where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges." (*People v. E.H.* (2022) 75 Cal.App.5th 467, 480 (*E.H.*); see *People v. Salgado* (2022) 82 Cal.App.5th 376, 380–381 [vacating gang enhancements and remanding for possible retrial at the election of the People].) Thus, the gang enhancements are reversed and the matter is remanded. On remand, the People may elect to retry the gang enhancements under the current gang enhancement law or, instead, they may proceed directly to resentencing on the convictions and any extant sentencing enhancements.

C. *Assembly Bill 333 Does Not Require Reversal of the Convictions*

As noted, Assembly Bill 333 added section 1109, in addition to amending the gang enhancement statute. (Stats. 2021, ch. 699, § 5.) When a gang enhancement is alleged, section 1109 requires the court, upon a request from the defense, to bifurcate the trial into separate phases, with the question of the defendant's underlying guilt to be decided first and the gang enhancement issue to be decided thereafter. (§ 1109, subd. (a).)

Garcia contends section 1109 is an ameliorative change to the criminal law that applies retroactively to nonfinal judgments, including his judgment. The People argue section 1109 is a statutory provision governing trial procedure—not an ameliorative change to the criminal law—and it therefore applies on a prospective basis only.

The appellate courts are divided on the question of whether section 1109 applies retroactively to nonfinal judgments. (Compare *People v. Burgos* (2022) 77 Cal.App.5th 550, 564–568, review granted July 13, 2022,

S274743 [section 1109 applies retroactively]; *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1129–1130 (*Ramos*) [same]; *People v. Montano* (2022) 80 Cal.App.5th 82, 108 (*Montano*) [same], with *People v. Perez* (2022) 78 Cal.App.5th 192, 207, review granted August 17, 2022, S275090 [section 1109 does not apply retroactively]; *People v. Ramirez* (2022) 79 Cal.App.5th 48, 65, review granted August 17, 2022, S275341 [same]; *People v. Boukes* (2022) 83 Cal.App.5th 937, 948, review granted December 14, 2022, S277103 (*Boukes*) [same].)  We need not weigh in on this issue because, assuming section 1109 applies retroactively to nonfinal judgments, Garcia has not established prejudice from the alleged error in failing to bifurcate.  (*Tran, supra*, 13 Cal.5th at p. 1208 [declining to decide whether section 1109 applies retroactively because defendant failed to establish prejudice from lack of bifurcation].)

In assessing whether an asserted failure to bifurcate trial under section 1109 prejudices a defendant, the Supreme Court has applied the state-law prejudice standard set forth in *People v. Watson* (1956) 46 Cal.2d 818.  (*Tran, supra*, 13 Cal.5th at pp. 1209–1211; see also *Ramos, supra*, 77 Cal.App.5th at p. 1131 [applying *Watson* prejudice standard to asserted section 1109 error].)  Under that standard, reversal is not proper unless it is reasonably probable the defendant would have achieved a more favorable outcome at trial but-for the purported state-law error.  (*Watson*, at p. 837.)

Garcia has not established prejudice under this standard, nor has he established prejudice under the more stringent standard applicable to federal constitutional errors (see *Chapman v. California* (1967) 386 U.S. 18, 24).  "[G]ang evidence, even if not admitted to prove a gang enhancement, may still be relevant and admissible to prove other facts related to a crime." (*Tran, supra*, 13 Cal.5th at p. 1208.)  Here, the People theorized that Garcia

12

and fellow OTNC member Gonzáles targeted G.B. based on their belief that he may have cooperated with law enforcement or snitched against the OTNC gang while he was incarcerated. The evidence of Garcia's gang membership and OTNC's activities was thus relevant to disputed issues of fact, including Garcia's motive and intent in committing the crime, and it would have been admissible at a trial focused solely on the underlying offenses. (See *Ramos, supra*, 77 Cal.App.5th at p. 1131 [asserted failure to bifurcate was harmless where "some, though not all, of the evidence of [the defendant's] gang membership and the gang rivalry would have come in at a trial on just the substantive offenses"]; *Montano, supra*, 80 Cal.App.5th at pp. 108–109 ["prejudice cannot be shown if all the gang evidence would have been admitted"]; *Boukes, supra*, 83 Cal.App.5th at p. 948 [lack of bifurcation was harmless error where "evidence of defendant's affiliation with [the gang] and the nature of [the gang] would have been admissible for reasons aside from any effort to prove the special circumstance and gang enhancement findings, for instance, defendant's motivation for the killing"].)

Further, the People introduced strong evidence of Garcia's guilt. It presented the jury with recorded admissions from Garcia that he "did the homey," took "out the trash" with a 20-gauge shotgun, and disposed of incriminating evidence after the shooting. There was also evidence that Garcia knew specific details about the timing and location of the shooting, including that the victim was "almost over a brick wall" when he was shot. Given this persuasive evidence of guilt, it is highly unlikely the admission of gang-related evidence prejudiced Garcia in his trial on the underlying charges. (See *Tran, supra*, 13 Cal.5th at p. 1208 [asserted failure to bifurcate was harmless where "[t]he case for guilt … was strong"]; *E.H., supra*, 75 Cal.App.5th at p. 480 [same, where "[t]he People presented strong evidence"

13

of guilt]; *Ramos, supra*, 77 Cal.App.5th at pp. 1131–1132 [same, where "the evidence [the defendant] aided and abetted the crime was strong"].)

Finally, the trial court instructed the jury not to allow bias, prejudice, or public opinion affect its assessment of the evidence. "We presume that the jury followed these limiting instructions, and there is nothing in this record to rebut that presumption." (*People v. Franklin* (2016) 248 Cal.App.4th 938, 953; see *Ramos, supra*, 77 Cal.App.5th at p. 1132 [failure to bifurcate harmless where "the jury was given a limiting instruction regarding its consideration of the gang evidence"].)

For all these reasons, the purported error in failing to bifurcate the gang enhancement proceeding from the trial on the underlying offenses was harmless. And because the asserted error was harmless, reversal of Garcia's convictions is unwarranted.[3]

D. *Garcia May Present his Sentencing Arguments on Remand*

"At the time of sentencing, section 654, former subdivision (a) required that a defendant who committed an act punishable by two or more provisions of law be punished under the provision that provided for the longest possible term. [Citation.] Effective January 1, 2022, Assembly Bill 518 amended section 654, subdivision (a) to permit an act or omission punishable under two or more provisions of law to 'be punished under either of such provisions.' [Citation.] Thus, under newly amended section 654, a trial court is no longer required to punish under the longest possible term of imprisonment when multiple offenses are based on the same act or omission. [Citation.] Section 654 'now provides the trial court with discretion to impose and

---

[3]   On appeal, the People argue Garcia forfeited his bifurcation argument by failing to request bifurcation in the trial court. Because Garcia suffered no prejudice from the lack of bifurcation, we do not address the People's forfeiture argument.

execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence.' " (*People v. White* (2022) 86 Cal.App.5th 1229, 1236.)

Garcia argues the amendments to section 654 apply retroactively to his case and require us to vacate his sentence and remand the matter for the trial court to exercise its new sentencing discretion. It is unnecessary for us to address this argument, however, because we are already vacating Garcia's gang enhancements and remanding the matter. Irrespective of whether the People elect to retry Garcia on the gang enhancements, the trial court must conduct a full resentencing proceeding. During resentencing, Garcia may present the court with any sentencing arguments he may have, including his section 654 arguments. (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"].)

IV

DISPOSITION

The judgment is reversed and the matter is remanded to the trial court. On remand, the People may elect to proceed directly to resentencing or, alternatively, they may retry Garcia on the gang enhancement allegations pursuant to the current version of section 186.22.

15

McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.