Filed 8/15/23  P. v. Vaughn CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE, | D080359 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD287705) |
| ANTON LAMAR VAUGHN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Peter L. Gallagher, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General for Plaintiff and Respondent.

# I

## INTRODUCTION

A jury found Anton Lamar Vaughn guilty of perpetrating multiple sex crimes against his underage relative, including one count of oral copulation with a person under 16 years of age (Pen. Code, § 287, subd. (b)(2); count 1),[1] one count of oral copulation with a person under 18 years of age (*id.*, subd. (b)(1); count 3), one count of committing a lewd or lascivious act on a 14- or 15-year-old child (§ 288, subd. (c)(1); count 2), and one misdemeanor count of sexual battery (§ 243.4, subd. (e)(1); count 4).  The trial court sentenced him to state prison for an aggregate term of 2 years 8 months.

Vaughn appeals his judgment and argues reversal is required because: (1) the victim made an incurably prejudicial volunteered statement about Vaughn's prior bad acts, which violated a pretrial in limine ruling and rendered his trial fundamentally unfair; (2) the prosecutor committed prosecutorial misconduct during closing arguments by vouching for the credibility of the victim and shifting the burden of proof to the defense; and (3) cumulative errors violated his due process right to a fair trial.  We affirm.

# II

## BACKGROUND

### A. *Prosecution Case*

When the following events occurred, victim Jane Doe was 15 and 16 years old.  She lived in an apartment with her mother and siblings.  Her grandmother, Anna J., lived in a nearby house.  Anna lived with her son, Nicholas J., and her nephew, Vaughn.  Vaughn is 12 years older than Doe and he is first cousins with Doe's mother, which makes Vaughn and Doe first cousins once removed.

---

1    Further undesignated statutory references are to the Penal Code.

During this timeframe, Doe sometimes went to Anna's house to do laundry. When Doe went to Anna's house, she started her laundry upstairs and either visited with Anna upstairs or worked on her homework in the kitchen downstairs. Vaughn often watched television on the downstairs couch while Doe was there.

Initially, Vaughn and Doe engaged in small talk when she came to Anna's house. As time passed, she told him about school, friends, and other events in her life. Sometimes, she told him about her acquaintances who drank alcohol, did drugs, and had sex. At one point, Vaughn asked Doe whether she had done anything sexual in nature and she said she had not, apart from kissing.

The conversations between Vaughn and Doe became more sexually explicit and Vaughn hinted he wanted to "teach" her. During one conversation, Vaughn learned Doe's astrological sign was Virgo, and he told her Virgos were "freaks when it comes to sexual activities." Doe grew uncomfortable with the sexual conversations and felt "at a loss for words." Doe and Vaughn discussed her sexual activities somewhere between three and five times.

Vaughn and Doe also exchanged social media messages with each other, which Doe described as sexual in nature. One of their conversations read as follows:

- Vaughn: "Next time i see u ... we gone work in experience and dont act slow [emojis] ... yea or nah."

- Doe: "We'll see kid."

- Vaughn: "Got all the opportunity ... and youll love it...i can guarantee. Too bad its gone be like a whole year til then."

- Doe: "Well idk about loving it [shrugging emoji]."

- Vaughn: "I think so ... i wanted to show u today ... but u was actin slow."

- Doe: "You could've just explained it."

- Vaughn: "Nope ... very simple.  If u let me ill show u next time you come."

Doe testified about two sexual incidents involving Vaughn and herself—one when she was 15 years old and one when she was 16 years old.

During the first incident, Doe went to Anna's house, started a load of laundry, and set up in the kitchen to do her homework.  Vaughn, who was on the couch, engaged Doe in a conversation that turned sexual.  At one point, Doe started walking upstairs to speak to Anna or move her clothes into the dryer, and Vaughn slapped her on her buttocks.  She felt "violated" and "shocked," and she walked backwards up the stairs so her backside was no longer facing him.  After Doe returned downstairs, she sat on the couch. Vaughn pulled down her shorts and underwear, separated her legs with his hands, placed one of his hands on her bare breast, and stuck his tongue inside her vagina for more than a minute.  Doe tried to close her thighs and told him multiple times to stop, but he did not stop.  Eventually, they heard someone open a door upstairs, which prompted Vaughn to stop and Doe to pull up her clothing.  Nicholas walked downstairs shortly after, but Doe did not tell him what happened.

The second incident occurred a few weeks later, after Doe turned 16 years old.  It was "very similar" to the first incident.  Doe went to Anna's house, started a load of laundry, and sat on the downstairs couch, where Vaughn was seated.  Doe took off her own shorts and underwear this time because she felt "more uncomfortable with him doing it than [her] doing it," and she thought it would take longer if he undressed her.  Vaughn took off his shoes and hat, placed his hand on her breast over her bra, moved her

4

thighs apart, and put his tongue inside her vagina for more than a minute. According to Doe, Vaughn pulled out his erect penis as well. Doe prayed, clenched her hands into fists, and raised her hands above her head during the encounter. Like the first incident, the second incident ended when Vaughn and Doe heard footsteps and a door open upstairs, followed by Nicholas coming downstairs. Again, Doe did not tell him what happened.

After one of the incidents, Vaughn sent Doe private messages on social media. His messages read, "I wanted a 2nd turn. [Emoji.] Especially when big draws came down." Doe testified the statement, "I wanted a second turn," meant Vaughn wanted "to perform oral sex again." She testified the term, "big draws," referred to Nicholas because he was a "big man."

Doe blamed herself for the sexual incidents with Vaughn because she did not scream, yell, or act to prevent them. The incidents affected her emotionally and mentally. Shortly after the second encounter, she tried to kill herself by swallowing pain relief pills and pain relief liquid. However, her mother intervened and Doe drank water, vomited, and slept it off. Doe also had nightmares about intruders, missed school, fell behind in her classes, lost her determination, and generally became numb. Both her mother and Anna noticed she was not acting like herself and she did not want to go to school or socialize with her friends.

A few months after the second incident, Doe disclosed the incidents to her best friends and they convinced her to tell her mother. She disclosed the incidents to her mother and, later on, to other family members. When Anna learned of the incidents, she confronted Vaughn. He denied the accusations, but Anna believed Doe. Anna told Vaughn to leave her house and he moved out a few days later.

5

During the cross-examination of Doe, defense counsel asked Doe about her preliminary hearing testimony in an attempt to establish inconsistencies with her trial testimony. Defense counsel asked Doe whether she had testified at the preliminary hearing that Vaughn exposed his penis during their sexual encounters. Doe admitted she did not testify about this fact at the preliminary hearing, but stated she was "really nervous" at the preliminary hearing and Vaughn's exposure "slipped [her] mind."

In a further attempt to establish inconsistencies in Doe's version of events, defense counsel questioned Doe about her reporting of the incidents to the officer and the detective who investigated the incidents. The officer and the detective both prepared incident reports, but neither of them indicated that Doe had reported Vaughn's exposure of his penis. When questioned about the reports, Doe testified that she had described Vaughn's exposure to law enforcement, but the written reports were "paraphrased" versions of her accounts and they were missing details she shared with law enforcement. On redirect, Doe again testified that the detective's report and the officer's report were paraphrased summaries of her conversations with law enforcement.

B. *Defense Case*

When Doe came over to Anna's house to do laundry, Nicholas did not notice any red flags concerning Doe and Vaughn. Nicholas never saw Doe or Vaughn adjusting their clothing, whispering, shushing each other, or doing anything out of the ordinary.

Vaughn testified in his own defense. He saw Doe at Anna's house nine or ten times. When she came over, they talked about her friends, school, dance routine, and boyfriends. Vaughn denied asking Doe to participate in sexual acts with him, experimenting with things like oral copulation, suggesting he would participate in sexual acts with her, or engaging in the

6

misconduct alleged against him. When questioned about his social media conversation with Doe, Vaughn testified the messages referred to dance routines he and Doe performed for each other—not sexual acts.

C. *Rebuttal*

The prosecution called Doe as a rebuttal witness. She denied she ever danced with Vaughn, danced for him, or offered to show him dance moves, and she denied he ever showed her dance moves.

## III

## DISCUSSION

A. *Character Evidence*

Vaughn argues we must reverse the judgment of conviction because Doe testified on direct examination that one of her family members had previously "accused [Vaughn] of doing something." Thereafter, the prosecutor asked Doe a series of questions about whether one of her family members had ever accused "someone else" of sexual misconduct, whether her family believed the accuser, and how the family's response to the accusation impacted Doe's decision to disclose her own sexual abuse. According to Vaughn, this exchange improperly conveyed to the jury that another family member previously accused *him* of sexual abuse. He claims the testimony violated a pretrial in limine ruling prohibiting the admission of his prior bad acts and violated his due process right to a fair trial.

We agree Doe's testimony about the family member's accusation against Vaughn potentially violated the trial court's pretrial in limine ruling, but the trial court immediately struck the offending testimony and dispelled any possible prejudice resulting from the testimony. Further, Doe subsequently testified that the sexual misconduct accusation referenced during her testimony concerned a different family member—not Vaughn.

7

Because the trial court struck Doe's testimony about the family member's accusation against Vaughn, and the remainder of her testimony concerned a different family member altogether, any purported violation of the in limine ruling was harmless, and it did not deprive Vaughn of a fair trial.

1. *Additional Background*

During the preliminary hearing, the prosecutor asked Doe why she did not disclose her first sexual encounter with Vaughn immediately after it occurred. She replied, "I was afraid that if I had told someone, they wouldn't believe me being that he's part of the family. And there's something else that didn't involve me, but where someone accused him of something, and they didn't believe the person. So I was afraid they wouldn't believe me, and it would just make it worse."

Thereafter, Vaughn moved in limine to exclude evidence of his prior "bad acts." Citing Doe's testimony from the preliminary hearing, the motion argued: "The defense has reason to believe that the prosecution may attempt to elicit testimony in this trial from [Doe] and [Doe's mother] about an alleged sex related incident that occurred between Mr. Vaughn and another person possibly a relative ...." It continued: "Upon further investigation, it appears another family member, 'Sherrell,' made vague and unfounded allegations about Mr. Vaughn—those allegations were not taken seriously by the family, and were never investigated nor reported to law enforcement." The motion requested that the court exclude any evidence of Vaughn's alleged prior "bad acts," which the motion argued was irrelevant evidence, inadmissible character evidence under Evidence Code section 1101, subdivision (a), and evidence subject to exclusion under Evidence Code section 352. The court granted the motion, without specifying the legal basis for its ruling, and stated, "We don't have [prior bad acts] for Mr. Vaughn; so that is granted."

8

At trial, the prosecutor questioned Doe on direct examination why she did not disclose her first sexual encounter with Vaughn and she replied, in part, "I still felt very embarrassed. I also—I know of a family member that had also accused [Vaughn] of doing something." Defense counsel interposed an objection and stated, "[i]n limine motions," after which the trial court asked the People to rephrase the question. But, before the prosecutor could pose another question to Doe, defense counsel moved to strike Doe's response and the court ordered the answer stricken.

The prosecutor then questioned Doe whether she was aware that "someone in [her] family had accused someone else of some kind of sexual misconduct[.]" Doe responded, "[y]es," and identified her aunt Shirell as the accuser. The prosecutor asked whether the family believed Shirell and Doe replied, "No, they didn't." According to Doe, this "made [her] want to keep [her own abuse] to [herself] more. [She] didn't want to say something and then them not believe [her] and then [she would] have to go to family events where [Vaughn would be] there."

The trial court called a recess after this exchange. During the recess, outside the presence of the jury and the witnesses, defense counsel argued Doe's testimony was "improper propensity evidence." The court stated Shirell's accusation was against a different family member, "not directed towards" Vaughn. Defense counsel responded that Doe—in her now-stricken testimony—said an "allegation [was] made *against Mr. Vaughn.*" (Italics added.) The court proposed striking all of the testimony concerning Shirell, but defense counsel stated that Shirell had indeed made an "allegation against a separate family member," and she wanted to question the witnesses about that accusation. The court instructed the prosecutor to speak with Doe

9

and ask her follow-up questions clarifying that Shirell's sexual misconduct accusations were made against a different family member—not Vaughn.

When Doe's direct examination resumed, the prosecutor asked Doe whether Shirell's sexual misconduct accusations were against a "different family member, not Mr. Vaughn," and she replied, "Yes." The prosecutor then asked whether the accusations against the "different family member" were the ones her family did not believe, and Doe replied, "Yes."

Defense counsel revisited the issue of Shirell's sexual misconduct accusations later in the case during the cross-examination of Doe's mother. Defense counsel asked Doe's mother about Shirell's sexual misconduct accusation and she testified that Shirell made the sexual misconduct accusation against a family member named Bruce.

2. *Analysis*

Vaughn moved in limine to exclude evidence of his prior bad acts because it was irrelevant evidence, inadmissible character evidence, and evidence subject to exclusion under Evidence Code section 352. As noted, the court granted the motion without identifying the legal basis for its ruling. But the parties assume in their appellate briefs that the court granted the motion on grounds that evidence of Vaughn's prior bad acts constituted inadmissible character evidence. In general, "evidence of a person's character or a trait of his or her character ... is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).)

Insofar as Doe testified that she knew "of a family member that had also accused [Vaughn] of doing something," a violation of the pretrial in limine ruling arguably occurred. Doe's testimony potentially suggested that Vaughn engaged in a "bad act" prior to the sexual misconduct at issue, albeit a nonspecific and unexplained act, or at minimum a family member accused

10

him of such conduct. However, assuming for purposes of this appeal that Doe's testimony constituted improper character evidence, the error did not prejudice Vaughn because it is not reasonably probable he would have obtained a more favorable outcome but-for the error. (See *People v. Samuels* (2005) 36 Cal.4th 96, 113 [applying *Watson* prejudice standard to erroneous admission of character evidence]; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Doe's testimony that a family member accused Vaughn of "doing something" was fleeting and vague. Immediately after she made the statement, defense counsel objected and the court ordered the testimony stricken. Later, the court instructed the jury, "If I order[ed] testimony stricken from the record, you must disregard it and must not consider that testimony for any purpose." " 'We presume that a jury follows the court's admonishments.' " (*People v. Phillips* (2022) 75 Cal.App.5th 643, 692; see *People v. Franklin* (2016) 248 Cal.App.4th 938, 955 [the "California Supreme Court has consistently found vague and fleeting references to a defendant's past criminality to be curable by appropriate admonition to the jury"].)

Further, the People's subsequent questions to Doe did not prejudice Vaughn. As noted, the court struck Doe's testimony that a family member accused Vaughn of "doing something," and the People then asked Doe whether "someone in [her] family had accused someone else" of sexual misconduct and whether the family believed the accuser. Standing in isolation, Doe's statement that a family member accused "someone else" of sexual misconduct did not implicate Vaughn. But, to the extent the jury potentially might have inferred the family member levelled a sexual misconduct accusation *against Vaughn*, Doe dispelled any such notion in her subsequent testimony. After the exchange just discussed, the prosecutor asked Doe whether the family member's sexual misconduct accusation was

11

"against a different family member, not Mr. Vaughn," and Doe said, "Yes." In short, Doe's testimony that a family member accused someone other than Vaughn of sexual misconduct did not prejudice Vaughn.

In addition to arguing Doe's testimony violated the in limine ruling, Vaughn argues the testimony deprived him of a fair trial. We disagree. Vaughn suffered no prejudice from Doe's testimony because the court struck her cursory and generic statement that a family member "accused [him] of doing something," and admonished the jury to disregard the stricken statement. Further, Doe's testimony about a prior sexual misconduct accusation involved a "different family member, not Mr. Vaughn ...." Doe's mere statement that a family member "accused [Vaughn] of doing something"—a statement stricken from the record—did not deprive Vaughn of a fundamentally fair trial. (See *People v. Suarez* (2020) 10 Cal.5th 116, 176 [witness' testimony about defendant's character did "not render the trial fundamentally unfair or cause prejudice," where testimony was brief and the court ordered it stricken]; see also *People v. Holmes, McClain & Newborn* (2022) 12 Cal.5th 719, 789 [an "impropriety does not violate due process when ... an objection [is] sustained and followed by a curative instruction"].)

B. *Prosecutorial Misconduct*

Next, Vaughn claims the prosecutor committed prosecutorial misconduct during closing arguments when he argued to the jury that the defense had failed to call logical witnesses—specifically, the officers who investigated Doe's sexual misconduct claims—to show that Doe's trial testimony was inconsistent with the accounting of events she gave to the officers. He argues the prosecutor's comments impermissibly "vouched" for Doe's credibility and shifted the burden of proof to the defense. We disagree.

12

The prosecutor's statements were proper comments on the state of the evidence, and they did not constitute prosecutorial misconduct.[2]

1. *Additional Background*

During closing arguments, defense counsel commented on certain alleged inconsistencies between Doe's trial testimony, on the one hand, and her preliminary hearing testimony and statements to law enforcement, on the other hand, in an effort to undercut her credibility. As defense counsel explained, Doe testified at trial that Vaughn exposed his penis to her, but she did not testify about this fact during the preliminary hearing and, furthermore, the officer report and the detective report of the incidents do not reflect that Doe reported this fact to law enforcement.

On redirect, the prosecutor accurately summarized Doe's trial testimony that the officer's report and the detective's report documenting the incidents were paraphrased statements of the discussions she had with law enforcement. Then, the prosecutor stated, "That's the evidence. That's the status of the evidence. What is in those reports—the Defense can call—they can call the officer ...." Defense counsel objected and stated, "Improper argument." The court instructed the prosecutor to "[r]ephrase."

The prosecutor continued: "The Defense—there's an idea called failure to call logical witnesses. Okay. So failure to call logical witnesses is—if there's some important part of your case and you don't call that witness, that's something ...." Defense counsel stated, "Same objection." The court sustained the objection, ordered the prosecutor to move on, and stated, "The foundation for failure to call logical witnesses has not been laid. Move on."

---

[2]    The People argue Vaughn forfeited his prosecutorial misconduct argument by failing to ask the trial court to admonish the jury to disregard the prosecutor's statements. We address the prosecutorial misconduct argument on the merits to forestall an ineffective assistance of counsel claim.

2. *Analysis*

"Under state law, ' "[a] prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct ...." ' [Citation.] Prosecutorial misconduct violates the federal Constitution when it results in a fundamentally unfair trial. [Citation.] When a claim of misconduct is based on remarks to the jury, we consider whether there is a reasonable likelihood the jury construed the remarks in an improper fashion." (*People v. Steskal* (2021) 11 Cal.5th 332, 350 (*Steskal*).) "We consider the remarks in the context of the argument as a whole and ' " 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." ' " (*Id.* at p. 353.)

As noted, Vaughn argues the prosecutor committed prosecutorial misconduct by commenting on the defense's failure to call the investigating officers as logical witnesses to establish inconsistencies between Doe's trial testimony and her prior accounts of the sexual misconduct incidents—before the court sustained defense objections to his comments. According to Vaughn, these partial comments improperly vouched for Doe's credibility and shifted the burden of proof to the defense. This argument does not warrant reversal.

The defense attempted to undercut Doe's credibility as a witness by convincing the jury she never disclosed to law enforcement officers the fact that Vaughn pulled out his erect penis during the second sexual encounter. The officer and the detective who interviewed Doe are two logical witnesses one would expect to corroborate the defense's story that Doe never reported this important fact to law enforcement. The prosecutor's commentary on the defense's failure to call these logical witnesses to support its version of events was not impermissible witness vouching; it was an acceptable comment on

14

the state of the evidence. (See *People v. Rhoades* (2019) 8 Cal.5th 393, 448 [" 'it is neither unusual nor improper to comment on the failure to call logical witnesses' "]; *People v. Chatman* (2006) 38 Cal.4th 344, 407 ["Comment on the failure to call logical witnesses is legitimate."]; *People v. Wilson* (2005) 36 Cal.4th 309, 338 [" '[P]rosecutorial comment upon a defendant's failure "to introduce material evidence or to call logical witnesses" is not improper.' "].)

"Our cases also recognize that '[a] distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and ... an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence.' " (*Steskal, supra,* 11 Cal.5th at p. 352.) The prosecutor's comments in this case fall into the former category. The prosecutor began to comment that the defense *could have* called the officers as witnesses ("the Defense can call—they can call the officer"). But he never stated, or implied, that the defense had a *duty* to produce evidence, nor that it bore the burden of proof. Thus, it is not reasonably likely the jury interpreted the prosecutor's comment in an improper manner. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1305 ["There is no reasonable likelihood the jury would have understood the prosecutor's remarks [about logical witnesses] to suggest that defendant had the burden to establish his own whereabouts that evening."]; *People v. Ratliff* (1986) 41 Cal.3d 675, 690–691 [prosecutor's remark that defense failed to present alibi testimony did not "suggest[] that defendant had a burden of proof which he failed to carry"]; *People v. Alaniz* (2017) 16 Cal.App.5th 1, 7 ["in general, a jury's consideration of the defense's failure to call logical witnesses is proper and does not impermissibly shift the burden of proof"]; *People v. Jasso* (2012) 211 Cal.App.4th 1354, 1369–1371 [prosecutor did not impermissibly shift burden of proof by stating there was no evidence shooting was an accident].)

Even if the prosecutor's observation could be considered misconduct, it was harmless under any prejudice standard. While the prosecutor was mid-sentence commenting on the defense's failure to call the officers, the court sustained a defense objection and instructed the prosecutor to "[m]ove on," which he did. Thus, the objection operated exactly as it was intended to operate. The court also instructed the jury that lawyers' remarks were not evidence and it admonished the jury not to assume lawyers' observations were true. Further, it instructed the jury that the prosecution bore the burden of proving Vaughn's guilt beyond a reasonable doubt, a sentiment echoed by the prosecutor himself during closing arguments.

In light of the order sustaining the defense objection to the prosecutor's comments, the court's instructions to the jury, and the prosecutor's own statements that the People bore the burden of proving Vaughn's guilt beyond a reasonable doubt, Vaughn suffered no prejudice from the prosecutor's brief and interrupted comment about logical witnesses. (See *Steskal, supra*, 11 Cal.5th at p. 353 [alleged prosecutorial misconduct based on prosecutor's comment to the jury about failure to call logical witnesses was harmless because "the comment was brief, 'defendant's objection was immediately sustained ... and the prosecutor did not return to the subject' "]; *People v. Gonzales* (2012) 54 Cal.4th 1234, 1275 [court cured any harm from prosecutor's allegedly improper comment on defense's failure to call logical witnesses by sustaining objection to comment and admonishing jury]; *People v. Stevens* (2007) 41 Cal.4th 182, 210 [prosecutor's speculation about what logical witnesses would have said if they had testified was harmless because the defense successfully made an "objection[,] [which] operated precisely as it was supposed to, and the jury never heard the comment"].)

C. *Cumulative Error*

Finally, Vaughn contends the alleged errors discussed above cumulatively deprived him of his due process right to a fundamentally fair trial. As discussed, Vaughn has shown, at most, a single fleeting violation of an in limine ruling—a violation the court immediately remedied by striking the offending testimony. This innocuous error did not deprive Vaughn of a fair trial. (*People v. Mataele* (2022) 13 Cal.5th 372, 422 [no cumulative error where defendant established one harmless error].)

IV

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

BUCHANAN, J.