Filed 3/11/26  P. v. Hoyt CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MITCHELL NICHOLAS HOYT,<br><br>        Defendant and Appellant. | A172097<br><br>(Superior Court of the City & County of San Francisco No. 24006892) |

In March of 2024, defendant Mitchell Nicholas Hoyt entered the garage of an apartment on Market Street and stole an electric scooter.  After his motion for a mistrial was denied, he was convicted by a jury of first degree burglary and sentenced to two years in prison.  Hoyt argues that the trial court erred in denying that motion, which was based on:  (1) the arresting officer's two references to "police reports" when testifying about his prior contacts with Hoyt; and (2) the prosecutor's having briefly shown a PowerPoint slide to the jury describing Hoyt's prior theft of a package as a "burglary," although charges based on the theft were dismissed as part of a plea bargain and did not result in any conviction.  We affirm.

## BACKGROUND

**The Scooter Theft**

On March 15, 2024, Shaun Mitschrich was at home in his apartment on Market Street.  Mitschrich's apartment was the upper unit on the third floor;

the building also contained a lower unit on the first floor, a shared kitchen and living room on the second floor, and a garage at street level to which both units had access. Around 5:00 p.m., Mitschrich was making tea when he heard his roommate "storming down the stairs." He followed down the stairs, where he found his roommates "congregating" and "talking about a person"—later identified as Hoyt—who had stolen the electric scooter that Mitschrich kept in the garage.[1] Mitschrich checked and discovered that his scooter "was indeed no longer [in the garage] where [he] had left it previously."

Earlier that day, Mitschrich's downstairs neighbor, Colin McIntosh, had propped open a door to the garage while cleaning up his unit and taking items into the garage. Mitschrich's scooter was visible from the doorway to the garage.

Around 5:00 p.m., McIntosh was in his office when he received a notification from one of his security cameras that "there was somebody in the backyard." He "immediately went to [his] office window and looked out and saw [Hoyt] walking up the staircase." He sent a text message to his partner, Ryan Timken, saying that someone was in the backyard. Timken called 911, and while he was on the phone, he also saw Hoyt walking up the exterior staircase. McIntosh "started to run up the stairs," and "as [he] was coming up the stairs and opening the front door of the home," he saw Hoyt "riding away on the scooter," and "[a]s [Hoyt] was scootering away, [he] turned and looked at me."

---

[1]     Mitschrich later valued the scooter at somewhere between $650 and $800.

**The Charges and Motions in Limine**

On May 7, 2024, the San Francisco County District Attorney filed an information charging Hoyt with first degree residential burglary (Pen. Code[2], § 459) (count I) and second degree burglary (§ 459) (count II).[3] The information further alleged three circumstances in aggravation pursuant to California Rules of Court, rule 4.421[4] and that Hoyt was ineligible for probation because he had sustained multiple prior felony convictions, including two for second degree burglary (§§ 459, 1203, subd. (e)(4)).

On September 26, after jury selection had begun, the prosecution filed a motion pursuant to Evidence Code 1101, subdivision (b), seeking to admit evidence of an incident that took place on July 3, 2020. According to the motion, Christopher Gamboa, a private security guard at a residence on Francisco Street, observed Hoyt climb over the front gate at a property via live security camera. Gamboa recognized Hoyt from two prior burglaries that had occurred at the property in June of 2020, in both of which bicycles were stolen from the garage. Gamboa detained Hoyt and found him in possession of a package addressed to a resident of the Francisco Street property. During that detention, Hoyt spontaneously stated, "if you let me go, I will give you back the bikes."

---

[2]     Further undesignated statutory references are to the Penal Code.

[3]     On September 30, 2024, the trial court granted the prosecutor's motion to dismiss count II pursuant to section 1385 in the interest of justice.

[4]     The circumstances in aggravation were that Hoyt's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings were numerous or of increasing seriousness, that Hoyt was on probation, mandatory supervision, post-release community supervision, or parole when the crime was committed, and that Hoyt's prior performance on probation, mandatory supervision, post-release community supervision, or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(b)(2), (b)(4), & (b)(5).)

3

The same day, defense counsel moved to exclude the same evidence. A hearing was held on September 26, and another on September 30, at which the trial court granted the prosecution's motion to admit evidence of the July 3 incident.

Also on September 30, counsel and the trial court discussed the testimony of Officer Haven Latimore, who had arrested Hoyt on April 16, 2024, after recognizing him from a photo taken during the incident. The prosecution indicated that Officer Latimore had had "three separate contacts" with Hoyt, that those prior contacts were "vandalism type incidents," and that she would be "seeking to bring in" that Officer Latimore had "seen Mr. Hoyt on video before, as well as in person before." The trial court cautioned that Officer Latimore's discussion of his prior contacts with Hoyt should be "sanitized," that the prosecutor should "make sure that . . . Officer Latimore is aware that he can't really discuss" the "criminal piece," and "cannot in any way suggest that the prior contacts are criminal related."

**The Trial**

Trial took place on October 2 and 3, 2024. It began with the testimony of Mitschrich, McIntosh, and Timken, and as part of their testimony, several security camera videos of Hoyt entering their garage were entered into evidence and shown to the jury.

The prosecution then called Officer Latimore, who testified regarding his general job description and his experience identifying people with whom he came into contact. After Officer Latimore testified that he knew Hoyt and identified him in court, the following took place:

"Q. How long have you known Mitchell Hoyt?

"A. So my first contact with him was 2019 after reviewing police reports.

4

"Q. MR. BIRKA-WHITE [defense counsel]: Objection, 402.

"THE COURT: Sustained.

"MR. BIRKA-WHITE: Move to strike.

"THE COURT: Yes. Granted."

And after a sidebar requested by defense counsel:

"THE COURT: So we are back on the record after a short side bar with counsel. [¶] Members of the jury, I just want give you an instruction. I granted a motion to strike that was made by the defense, and by that, I mean that Officer Latimore's testimony to the last question is stricken. So you cannot consider it for any purpose whatsoever. Thank you. [¶] So, Ms. Roze, if you would like to ask your next question or rephrase your question."

After Officer Latimore testified that he met Hoyt in 2019 and had come into contact with him in person four times since:

"Q. Within the past one and a half years, so from August of 2022 until April of this year—well, let me back up. [¶] Did you arrest Mr. Hoyt in April of this year for this incident that we are here discussing in trial?

"A. Yes, I did.

"Q. Okay. Between August of 2022 to April of 2024, had you seen him at all?

"A. I would have to—can I check some police reports to get the dates straight?"

The trial court again sustained defense counsel's objection and granted his motion to strike the answer, a brief recess took place during which the court held "a short side bar with Officer Latimore and counsel," and Officer Latimore's testimony then resumed. He went on to testify that based on his prior interactions with Hoyt, he had identified him from a photo taken during

5

the incident, and on April 16, placed him under arrest, at which time he was wearing the same jacket he was seen wearing during the charged burglary.

At the end of the day and outside the presence of the jury, the court and counsel discussed Mr. Gamboa's testimony regarding the two bike thefts and package theft at the residence on Francisco Street. The prosecutor indicated that Hoyt had been charged in all three incidents, and had entered into a "package disposition" according to which he plead guilty to second degree burglary (§ 459) in connection with one of the bike thefts, and that the other two counts had been dismissed pursuant to a *Harvey*[5] waiver. After the prosecutor proposed introducing a certified minute order to prove how the July 3, 2020 incident was resolved, the trial court observed that the minute order contained "a lot of information . . . that . . is somewhat prejudicial to Mr. Hoyt," and suggested that the parties instead agree to a "simple stipulation" regarding how that incident was resolved. The parties did so, agreeing to stipulate "that the People and Mr. Hoyt reached a negotiated disposition in relation to the July 3rd, 2020 incident involving Mr. Gamboa in which Mr. Hoyt took responsibility for the conduct."

Christopher Gamboa went on to testify briefly that on July 3, 2020, he was providing private security for a family that lived on Francisco Street. Around 10:00 p.m. that night, while the family was away on vacation, Gamboa "observed numerous packages on the porch," and was "do[ing] our normal routine, watching live cameras and being in the area to respond." He saw Hoyt "look around, and it appeared as soon as he felt it was clear," "climb[] over the secured front gate located on the upper level, at which point he appeared to retrieve a package." Gamboa then "exited [his] personal vehicle and started running towards the front gate," and "intercepted [Hoyt]

---

[5]     *People v. Harvey* (1979) 25 Cal.3d 754.

6

now in the public sidewalk with the package that was originally located inside or behind the front gate in his hands." At the conclusion of Gamboa's testimony, the trial court read the jury the parties' stipulation, discussed above.

The prosecution then rested, the defense did not present any evidence, and the trial court instructed the jury.

Counsel then gave their closing arguments. Toward the beginning of hers, the prosecutor discussed the second element of the burglary charge, the requirement that Hoyt entered the residence with the "intent to commit theft," arguing to the jury that it could "infer what somebody's intent was by the circumstantial evidence that we have." She went on:

"Okay. So let's talk about the July 3rd, 2020 incident. The jury instruction that you have for this is CALCRIM 375, and it tells [*sic*] prior uncharged conduct, meaning, not charged in this case. Meaning, I'm not asking you to convict him for that incident, right. [¶] Other conduct: What is the purpose of using that conduct? The purpose in this case is to infer his intent."

At this point, defense counsel objected "to the slide of the movie screen." Defense counsel would later describe the slide—which is not part of the record on appeal—as containing a "header section" describing the July 3, 2020 incident as the "2020 burglary." The trial court asked that the slide be taken down, and a brief sidebar conference was held. The prosecutor then resumed her argument, contending that there were similarities between the charged offense and the July 3, 2020 incident.

Around 3:00 p.m., the jury began its deliberations.

**The Motion for Mistrial**

The next day, while the jury continued deliberating, defense counsel made an oral motion for a mistrial. The motion was based on the slide's description of the 2020 incident as the "2020 burglary," together with the two mentions by Officer Latimore of "his reviews of police reports involving Mr. Hoyt."

The trial court asked whether the prosecutor had complied with the court's standing order that both sides provide any PowerPoint to the other side "before it is presented so that any objectionable material can be resolved before the jury comes in," and defense counsel indicated that the prosecutor had done so. When asked why he did not raise the issue upon reviewing the prosecution's slides, defense counsel responded that he could not open the "password protected link" that the prosecutor sent, and that although he reviewed the slides in court "very, very quickly" before the prosecutor's argument, he "just did not see" the objectionable phrase, and "wasn't looking for it because it was excluded information."[6]

The prosecutor then argued that although the burglary conviction was "not coming in . . . that does not change the fact that the Defendant's conduct on July 3rd, 2020 was in fact, a burglary," and that, with respect to Officer

---

[6] "MR. BIRKAWHITE: I did [*sic*] notice for two reasons. [¶] Firstly, the link that Ms. Roze sent me wasn't via e-mail that I can—and this is not her fault, should be clear about this, about what I'm describing. [¶] It was not sent via an e-mail. It was sent some password protected link that I could not open up. I just wasn't able to log in via the link that she sent. So she did show me the slides in court and we went through them very, very quickly. [¶] Again, this is not anyone's fault other than my own, I guess. But I—as I reviewed the slides, I just did not see that phrase, '2020 burglary,' and I frankly, wasn't looking for it because it was excluded information, and I didn't actually realize that language was in the PowerPoint until it was in front of the jury."

Latimore's testimony, his reference to police reports was not prejudicial because "individuals are part of police reports for many, many reasons," and that "a reference to a police report doesn't necessarily mean it's criminal in nature."

The trial court denied the motion. The court "agree[d] with the People that . . . the Court didn't issue an . . . order that explicitly forbade the People from referencing the prior incident as a burglary," although such reference "may have violated the spirit of what the Court was trying to do."[7] The court noted that "[f]rankly, I was not able to see the slide from where I was sitting," and that after defense counsel's objection, "the Court quickly convened a sidebar, and ordered Ms. Roze to delete the reference to the word burglary from the slide." The court then concluded that "given that there was evidence from Mr. Gamboa about [the] underlined [*sic*] conduct," there was no irreparable prejudice from the "fleeting . . . reference [on] the slide."

With respect to Officer Latimore's testimony, the court noted that it had immediately sustained defense counsel's timely objections to the testimony, granted the motions to strike, and specifically admonished the jury not to consider the testimony, so that "whatever prejudice may have occurred was swiftly remedied, and I certainly do not think that it was irreparable prejudice that rises to the level of the grant of a mistrial."

**Jury Verdict and Sentence**

Jury deliberations resumed on the morning of October 7, and approximately half an hour later, the jury reached its verdict, finding Hoyt guilty of first degree burglary.

---

[7] The court also observed that, "given that [review of the slides] was the appropriate juncture to flag something like this and then to resolve it, I do think that the concern being raised about it now, a day after is somewhat untimely."

9

On October 21, after a brief court trial, the court found two of the three alleged aggravating circumstances true.[8] And on October 28, after finding certain circumstances in mitigation to be true under California Rule of Court, rule 4.423(c), the trial court sentenced Hoyt to the lower term of two years.

Hoyt filed a notice of appeal.

## DISCUSSION

The denial of a motion for mistrial is generally reviewed for abuse of discretion. (*People v. Avila* (2006) 38 Cal.4th 491, 573; *People v. Jenkins* (2000) 22 Cal.4th 900, 985 ["A motion for mistrial is directed to the sound discretion of the trial court"].) " 'A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.]' [Citation.] A motion for a mistrial should be granted when ' " 'a [defendant's] chances of receiving a fair trial have been irreparably damaged.' " ' " (*People v. Collins* (2010) 49 Cal.4th 175, 198–199.) And as the moving party, Hoyt bore the burden of proof to demonstrate such irreparable damage. (*People v. Garcia* (2022) 83 Cal.App.5th 240, 248.)

We find no basis for disturbing the trial court's exercise of its considerable discretion in denying Hoyt's motion for a mistrial. Turning first to Officer Latimore's two references to "police reports," they were brief and isolated—occupying some seven lines of the transcript in the context of nearly 150 pages of testimony over the course of a two-day trial. (See *People v.*

---

[8] The court found that the prosecution had not proved beyond a reasonable doubt the circumstance in aggravation that Hoyt's prior convictions were numerous or of increasing seriousness.

10

*Bolden* (2002) 29 Cal.4th 515, 555 ["fleeting reference to a parole office" in response to question about defendant's address was not "significant in the context of the entire . . . trial" and did not require mistrial].) In addition, the statements were vague, and did not clearly establish or elaborate on any of Hoyt's criminal history. (See *People v. Franklin* (2016) 248 Cal.App.4th 938, 956 ["three vague and fleeting references to appellant's criminal history" did not require mistrial where "[n]one of the statements clearly referred to appellant, and none unambiguously pointed to arrests, convictions, or any other actual criminal history"].)

Furthermore, as noted, defense counsel immediately objected to both of Officer Latimore's statements. The trial court sustained those objections, granted defense counsel's further motions to strike the answers, and immediately admonished the jury that it could not "consider [them] for any purpose whatsoever." "The California Supreme Court has consistently found vague and fleeting references to a defendant's past criminality to be curable by appropriate admonition to the jury." (*People v. Franklin*, *supra*, 248 Cal.App.4th at p. 955, citing *People v. Collins*, *supra,* 49 Cal.4th at pp. 197–199 ["brief and ambiguous" reference to defendant being in "Susanville" state prison]; *People v. Valdez* (2004) 32 Cal.4th 73, 123 [detective's statement that he "*went to the jail* and found [defendant's] mug photo"]; *People v. Bolden*, *supra*, 29 Cal.4th at p. 555.) The jury here was given such an admonition, immediately and in the clearest possible terms.[9] As Hoyt's own brief acknowledges, "[i]n the absence of evidence to the contrary, we presume the jury heeded [that] admonition." (*People v. Burgener* (2003) 29 Cal.4th 833,

---

[9] The trial court also instructed the jury, at the close of the evidence and pursuant to CALCRIM No. 222, that "[i]f I sustain[ed] an objection, you must ignore the question," and "[i]f I order[ed] testimony stricken from the record you must disregard it and must not consider that testimony for any purpose."

11

874; see *People v. Seumanu* (2015) 61 Cal.4th 1293, 1336 ["absent some indication to the contrary, we assume a jury will abide by a trial court's admonitions and instructions"]; *People v. Seiterle* (1963) 59 Cal.2d 703, 710 [only in "exceptional cases" is "improper subject matter . . . of such a character that its effect . . . cannot be removed by the court's admonitions"].) Hoyt has provided no such evidence or indication, nor any reason to depart from that well-settled presumption here.[10]

With respect to the PowerPoint slide describing Hoyt's 2020 theft of a package as the "2020 burglary," we cannot agree that it irreparably damaged Hoyt's chances of receiving a fair trial. (*People v. Collins*, *supra*, 49 Cal.4th at p. 198.) Hoyt makes much of the trial court's statement that the slide's description of his 2020 conduct as a burglary "may have violated the spirit of what the court was trying to do." However, as noted, the trial court twice "agree[d] with the People" that such description was not explicitly forbidden by its order. Similarly, Hoyt argues that the slide's description "violated the express stipulation entered into by the parties." But even if the slide violated the "spirit" of the trial court's order or the letter of the parties' stipulation—

---

[10] Hoyt's reliance on *People v. Allen* (1978) 77 Cal.App.3d 924 is unavailing. There, the Court of Appeal held that the trial court erred in denying the defendant's motion for a mistrial after a rebuttal witness testified that the defendant was "on parole," concluding that the trial court's admonition to the jury to "disregard [the comment] completely, as if it were never said" was insufficient to cure the prejudice, given the "extremely close" nature of the case, "in which the jury had to make its fact determination based upon the credibility of the appellant and his witnesses and on the credibility of the prosecution's witnesses." (*Id*. at p. 935.) Not so here, where Hoyt did not testify or call any witnesses, there was no credibility contest, and the extensive video of the incident meant the only real question for the jury was whether intent to commit theft could be inferred from the circumstantial evidence. (See *id*. at p. 935 [finding of exceptional circumstances "depends upon the facts in each case"].)

12

contentions with which we do not necessarily agree—Hoyt offers no argument or authority in support of the further proposition that such violation "irreparably damage[d]" his chances of receiving a fair trial. (*People v. Collins*, *supra*, 49 Cal.4th at p. 198.) And given that Hoyt does not challenge the admissibility of the evidence of the underlying conduct, we can perceive no such damage.

Furthermore, as noted, in denying Hoyt's motion the trial court indicated that "[f]rankly, I was not able to see the slide from where I was sitting." Obviously, the trial court was in the best—indeed, the only— position to know what the slide looked like, how visible the objectionable language on it was, and how long it was shown to the jury before it was taken down. Under these circumstances, we will decline to substitute our judgment for that of the trial court as to whether displaying the slide irreparably damaged Hoyt's chances of receiving a fair trial. (See *People v. Chatman* (2006) 38 Cal.4th 344, 369–370 ["Whether a particular incident is incurably prejudicial requires a nuanced, fact-based analysis"].)

## DISPOSITION

The judgment is affirmed.

13

_____

RICHMAN, J.

We concur.

_____

STEWART,  P. J.

_____

MILLER, J.

(A172097N)